# Jackson v. Grisham, et al.

### Bil to Subject Land to Payment of Debt.

(Decided April 4, 1911. 55 South. 165.)

1. *Bills and Notes; Evidence.*—The evidence stated and examined and held to justify a finding that the notes set up as a foundation for a bill to sell lands of the maker, were not executed as alleged, or if so executed, they were without consideration .

2. *Same; Admissions.*—As tending to show that the note did not then exist, and as tending to establish the plea of non est factum, a verified claim of exemptions filed by the payee of the note after their alleged execution omitting said notes therefrom is admissible.

APPEAL from Colbert Circuit Court.

Heard before Hon. W. H. SIMPSON.

Bill by Calvin G. Jackson, against Shelby Grisham, as administrator, and others. From a decree for defendants, complainant appeals. Affirmed.

The bill seeks to have sold for the debts of a third person alleged to be due the complainant certain lands described in the bill, the title to which were at the time of her death in Sallie M. Long, formerly Sallie M. Winston. The foundation of the action was two certain promissory notes or obligations in writing, purporting to have been executed on the 30th day of March, 1883,

by Sallie M. Winston, and payable to the complainant —one for $1,000, payable at the death of the maker, with 8 per cent. interest per annum during that term; the other for $500, payable 20 years after the date or at the death of the maker, with 8 per cent. interest, each ·note including costs and attorney's fees. The bill was filed against the administrator and the husband and heirs of Sallie M. Winston (dying Long); some of the heirs being minors. The bill further alleges that a certain mercantile firm claims a lien or mortgage on some of the land. The other facts sufficiently appear from the opinion.

GEORGE P. JONES, and S. W. FRIERSON, for appellant. The demurrer was properly overruled to the bill.—*May v. Parham,* 68 Ala. 253. At the time the notes were made there was no law in Alabama creating a homestead exemption for minor children in the lands of their deceased mother, and the laws subsequently enacted will not control.—*Wilson v. Brown,* 58 Ala. 62; *Horn v. Wyatt,* 60 Ala. 297; *Nelson v. McCredy,* 60 Ala. 201. No affirmative relief can be had on answer, but must be obtained by cross bill.—*Ross' case,* 101 Ala. 364; *Cotton v Scott,* 97 Ala. 447; *Cummins v. Gill,* 6 Ala. 562. The answer admits that Long gave the lands to his wife but without knowledge that she was indebted to the complainant. In such a case, the presumption to become the owner of the property arising from the payment of the purchase money is rebutted by the stronger presumption of an intention to make an advancement to the wife.—*Long v. King,* 117 Aa. 4430. Counsel discuss the evidence and concludes that the chancellor was in error as to his finding on the facts.

KIRK, CARMICHAEL & RATHER, for appellee. The pecuniary conditions of the complainant and his ability

[Jackson v. Grisham, et al.]

to loan money to the deceased was a subject of legitimate inquiry.—*Glover v. Gentry,* 104 Ala. 231. So also was the pecuniary condition of the deceased.—Authorities supra; see also on the question of admission, *Bailey v. Blackshire,* 142 Ala. 258; *Polly v. McCall,* 37 Ala. 20; 1 L. R. A. 224; 2 Har. 354; 45 Ky. 543; 44 N. Y. Supp. 575; Wigmore on Evid., secs. 1048 and 1051. If the claims were owned by some third person in 1891, when complainant filed his claim of exemptions, that fact was peculiarly within the knowledge of the complainant, and it was his duty to show it.—*Loeb v. Huddleston,* 105 Ala. 262. Respondents having shown that there was a time since the execution of the notes when the complainant did not own them, and the burden being on him to prove ownership, complainant must overcome that proof or fail in the suit.—*Jones v. Franklin,* 81 Ala. 161; *Kyle v. Ward,* 81 Ala. 122; *Foster v. Goodwin,* 82 Ala. 384; *Appel v Crane,* 83 Ala. 312.

McCLELLAN, J.—The decree dismissing appellant's bill was predicated upon the findings of fact that the instruments alleged to have been executed for (upon the request of) Sallie Mariah Winston were not so executed: or, if so, that they were without consideration. After careful review of the entire legal evidence, covering practically 300 typewritten pages of the transcript, conflicting as it is, this court is of the opinion that both conclusions of the chancellor are well founded.

The obligations, certified here for inspection, are for $1,000 and for $500, respectively. They bear date of March 30, 1883. That for $1,000 purports to be payable upon the death of the payor, Sallie Mariah Winston, and to bear interest at 8 per centum from its date. That for $500 purports to be payable "twenty years after date or at my death," and to likewise bear interest. The

payor was a negro woman, who had at that time some 33 acres of land and about $250 in the hands of Judge John A. Steele. She then lived in the common abode of complainant, her brother-in-law, and of her mother, Minerva Winston. ·

The weight of the evidence leaves no room for doubt that Sallie Mariah was not a charge upon the bounty or energy of complainant. Indeed, the conclusion from the evidence cannot be avoided that, if she was not supported by or out of her own means, she was cared for by her mother, Minerva. That the payee (complainant) was not then a man of sufficient means to have for loan the aggregate sum of $1,500 for so great, if not so uncertain, a period, admits, we think, of no rational doubt. Granting that he possessed the limit of thrift and industry suggested by evidence to that effect in his favor, still it is far short of demonstrating in any degree his financial ability to afford that sum as the basis of the obligations before us. Surely in the comparatively few years, intervening between the date of his marriage, in the late 70's, to the payor's sister, and of the date the obligations here he (complainant), could not, under any rationally possible theory or arrangement consistent with the evidence, have furnished money or service to the alleged payor of the value shown by the obligations. The evidence strongly supports the conclusion that complainant was possessed of small means or property when he married and for several years thereafter. However good his credit may then have been, he appears to have given mortgages in comparatively small sums to procure the advancement of supplies for his operations of farming, hauling, etc.; and his credit may have been as fair as some of his witnesses depose, and yet he could not have possessed the financial ability to lay

the foundation for the total sum represented by these notes.

As to improvements made by him on intestate's' lands before her marriage to Long, the weight of the evidence is opposed thereto. The papers do not, as indicated, purport to be signed by intestate's hand. She is shown to have been able to write her name. The explanation of her failure to subscribe her name is that her writing hand was then disabled. This is disputed by the evidence for the respondents. Two of the three persons who appear as attesting her directed execution of the instruments are shown by some of the testimony to have made statements opposed to their participation in the execution thereof. While both papers are said to have been prepared and executed at one time, a green ink was used for one and a black for the other. The evidence affords no explanation of this circumstance. On neither does the ink appear to have faded to any real extent, though the paper in each instance appears to be old. Whether this appearance is the result of much handling or from real old age may be a matter of doubt.

There is another fact that cannot be ignored: That is, the obvious punching out, and also rubbing to the left of the hole, of the name of the printer of the blank note upon which the $500 note was written. One of the attesting witnesses undertakes to testify, and does so, that he saw this hole on the note on March 30, 1883. It is, of course, possible that this witness noted the fact at the time, and remembered it 25 years thereafter. Yet, under all the circumstances, the probabilities pointedly question the verity of such testimony. If that evidence is not reasonably credible, it reflects upon the truth of the transaction it would, if accepted, support.

Another fact that is not without force is that in 1891 complainant filed his claim of exemptions and these

notes were not listed thereon. The claim was verified by complainant; and contained the statement, following the listing of personal and real property, that *"the above constitutes all of the property of affiant* all of which is claimed as exempt as above stated." (Italics supplied.) There is no evidence of any character that the notes were ever assigned in any way by complainant. Presumably the complainant held the notes in 1891, if they then existed; no previous disposition of them having been shown.

Upon the issue made by the plea of non est factum the certified copy of the claim of exemptions was admissible. It was a statement, under oath and subscribed, tending to show, when unexplained, that the notes in question did not then exist.—*Dupuy v. Harris,* 6 B. Mon. (Ky.) 534; *Huntington v. Chisholm,* 61 Ga. 270; *Barber v Bennett,* 60 Vt. 662, 15 Atl. 348, 1 L. R. A. 224, 6 Am. St. Rep. 141; Wigmore on Ev. §§ 1048, 1051; Jones on Ev. § 236 et seq.

While there is evidence supporting the validity of the notes in respect of their execution and of their consideration, we think, to repeat, it is not sufficient to overcome the evidence opposed. The probabilities strongly resist the appellant's contention, and when these are reinforced by the weight of the evidence to which we have, from necessity due to the volume thereof, most briefly referred, the correctness of the chancellor's conclusion cannot be gainsaid.

Affirmed.

SIMPSON, MAYFIELD, and SAYRE, J. J., concur.